**UNITED STATES of America,**
**Plaintiff,**

v.

**Agostino DiROMA, Jr., Rey Vayer, and**
**J. Harlan Pease, Defendants.**

**Crim. A. No. 63–226.**

United States District Court
D. Massachusetts.

Jan. 19, 1966.

W. Arthur Garrity, Jr., U. S. Atty., Paul F. Markham, Asst. U. S. Atty., for United States.

Harold C. Peterson, Jr., Southbridge, Mass., Morris M. Goldings, Boston, Mass., for DiRoma.

Gerson Askinas, Springfield, Mass., for Pease and Vayer.

JULIAN, District Judge.

A hearing was held on December 13, 1965, on paragraph 1 of the motion of the defendant DiRoma to dismiss the indictment against him. The defendant bases his motion on the Fifth [1] and Sixth [2]

1. "No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

2. "In all crminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

Amendments to the United States Constitution and the immunity provisions of 15 U.S.C. § 77v(c),[3] particularly as they may apply to four specific occasions on which the defendant came into contact with representatives of the Securities and Exchange Commission (SEC). I shall consider each of the four instances individually.

## I. *Meeting in May, 1960*

■ The defendant learned in April or May of 1960 that he was under investigation by the SEC. He went to the Boston Regional Office of the SEC in mid-May of 1960 on his own initiative. He met with Mr. Kendrick, the regional administrator, Mr. Dowd, the assistant regional administrator, and Mr. Delaney, the chief enforcement attorney. Before the defendant could make any statement, Kendrick asked if he was represented by counsel. When the defendant replied in the negative, Kendrick strongly advised him to retain counsel and refused to discuss the investigation with him until he was so represented. With that, the interview was ended.

I find that the defendant voluntarily initiated the conference, and was prevented from making any damaging statement until he should obtain advice of counsel. His rights were more than adequately protected by the position taken by the SEC representatives. I rule that no rights of the defendant were infringed at the meeting in May of 1960.

## II. *Hearing of June 9, 1960*

In answer to a subpoena issued by the SEC, the defendant appeared at a hearing on June 9, 1960, before Delaney at the Boston Regional Office of the SEC. As evidenced by defendant's exhibit 2, which I find to be an accurate transcript of that hearing, the proceedings opened as follows:

MR. DELANEY: All right, we will note the appearances. Edward P. Delaney and Joseph Lynch appearing for the Securities and Exchange Commission; and, Mr. Silbert, you appear for who?

MR. SILBERT: I appear for, I guess, the three persons named in the order—the partnership and two individuals.

(Pause.)

Then I appear for all three persons named in the order; the partnership and two individual partners. My name is Coleman Silbert, C-o-l-e-m-a-n, S-i-l-b-e-r-t. My business address is 27 State Street, Boston, 9.

MR. DELANEY: Mr. DiRoma, this is an investigation to determine whether there have been violations of the various sections of the Securities Exchange Act as set forth in an order that you have looked at; and it is a Commission practice in matters of this kind that you are entitled to representation by counsel of your own choosing; and you are represented this morning by Mr. Coleman Silbert?

THE WITNESS: (Nodding head in the affirmative.)

MR. DELANEY: I wish to advise you that any of the questions that I ask you that you feel may incriminate you or hold you to fine, penalty, or forfeiture, you have a right to refuse to answer. Your counsel will advise you on questions that he feels are not within the scope of this order, if any questions of that type are asked; and you have a right to refuse to answer those questions.

I want to point out that you do not have to answer any question that you feel may incriminate you. * * * "

■ Some question was raised at the hearing before this Court as to whether Attorney Silbert represented DiRoma as an individual or merely the partnership of

---

3. " * * * [N]o individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying."

DiRoma, Alexik & Co. I find that Attorney Silbert represented the partnership and the two individual partners, namely, the defendant DiRoma and Edward F. Alexik. There is no intimation that Silbert was acting fraudulently or in bad faith toward DiRoma, and there can be no doubt that Silbert had extensive experience in SEC proceedings, since he had been an assistant regional administrator of the SEC from 1957 through 1959. Silbert was shown a copy of the order of investigation pursuant to which the June 9 hearing was held. He admittedly had had experience with such orders and in fact understood this order. I find that there was no infringement of the defendant's rights under the Sixth Amendment.

 I find further that the defendant's rights under the Fifth Amendment were not infringed at the hearing on June 9. The passage from the transcript of that hearing quoted above shows that Delaney took pains to advise the defendant of his right to refuse to answer *any* question "that you feel may incriminate you or hold you to fine, penalty or forfeiture." The defendant makes much of the fact that Delaney did not go on to inform the defendant of the statutory provisions of 15 U.S.C. § 77v(c), under which no individual may be prosecuted for any transaction concerning which he is compelled, after claiming his privilege against self-incrimination, to testify. I find no merit in this contention. There was no duty on SEC officials to inform DiRoma of those statutory provisions. Furthermore, there was no occasion to inform him of the immunity provisions in the statute since he never claimed his privilege against self-incrimination, and was never compelled to testify or produce evidence despite any such claim. The defendant was thoroughly advised of his right to refuse to answer any incriminating question.

III. *Visit of Joseph Schwartz on July 28, 1960*

 On July 28, 1960, Joseph Schwartz, a securities investigator of the SEC, visited DiRoma, Alexik & Co. and asked to see records regarding the Oreclone Concentrating Corporation and regarding purchases and sales of stock in Formula 409, Inc.

It is unclear as to whether Schwartz interrogated the defendant orally on this occasion. It is agreed that Schwartz did not inform the defendant of his constitutional rights. Assuming that there was an interrogation, the following circumstances lead me to conclude that there was no infringement of those rights with regard to either documents produced or statements made:

a) By mid-May, 1960, the defendant was aware that he was under investigation by the SEC. Prior to the June 9 hearing he had been shown the formal order of investigation.

b) At the meeting in May between the defendant and three SEC representatives, he had been apprised of his right to counsel and strongly advised to secure counsel before making any statement to an SEC representative.

c) By June 16, 1960, the defendant had retained Efrem Gordon as counsel, particularly with regard to a civil suit brought against him by the SEC based on the very matters concerned here.

d) At the hearing on June 9 the defendant had been carefully advised by Delaney of his right to refuse to answer any question which might incriminate him or hold him to "fine, penalty, or forfeiture." He was also again advised of his right to counsel.

Based upon this recent experience, it is inconceivable that on July 28 the defendant was unaware of his rights to consult counsel and to refrain from answering questions. Furthermore, the meeting took place at the defendant's place of business and pursuant to no subpoena or other form of compulsory process. Finally, the defendant has given no indication that he made any statement, incriminating or otherwise, to Schwartz.

## IV. *Civil Action No. 60–519–S*

On July 19, 1960, Civil Action No. 60–519–S was begun in this Court by the SEC against DiRoma, Alexik & Co. and the individuals DiRoma, Alexik, and Vayer. Although DiRoma was subpoenaed to testify and produce books and records at a hearing on a preliminary injunction on August 9, 1960, he was not called upon to do either by the Commission or his own lawyer, Attorney Gordon. At the termination of that hearing on August 9, the Court entered a preliminary injunction enjoining all of the defendants in that case from selling common stock of Formula 409, Inc., or any other security by use of the mails or any means in interstate commerce. On August 10 Gordon called Dowd of the SEC to discuss what effect an assent by DiRoma to the entry of a permanent injunction would have on any prospective criminal prosecution. Dowd told Gordon that his office could not promise that there would be no criminal prosecution because 1) the investigation was still going on, and 2) it was against government policy to give any such promise. Furthermore, Dowd informed Gordon that the Boston office could not make a commitment on immunity without the approval of the Washington office. Nevertheless, Gordon decided to recommend that his client consent to a final decree. By way of procedure Gordon decided that it would be preferable for his client to submit an affidavit of consent rather than appear in court personally. Dowd consented to this procedure and allowed Gordon to draft the affidavit himself. DiRoma signed the affidavit prepared by Gordon, and the final consent decree was entered on September 12, 1960.

I find that the affidavit was submitted voluntarily by DiRoma through his attorney; that there was neither influence nor compulsion on the part of any representative of the SEC; that there was no offer of immunity made by any representative of the SEC, either expressly or impliedly, to induce the defendant to consent to the decree or to submit an affidavit. There can be no question here as to lack of representation by counsel or lack of knowledge of the Fifth Amendment privilege against self-incrimination. Furthermore, the defendant was specifically advised by the SEC, through his attorney, that immunity from criminal prosecution would not and could not be offered to him.

## V. *Issue of Immunity*

More generally on the question of immunity, the statute involved, 15 U.S.C. § 77v(c), unambiguously states that no individual shall be prosecuted for any transaction concerning which he is compelled to testify, *after having claimed his privilege against self-incrimination.* The statute clearly establishes as essential prerequisites to gaining immunity:

1) that the defendant actually claim his privilege against self-incrimination, and *then*

2) that he be compelled to make statements or give evidence of a transaction for which he might be prosecuted. Edwards v. United States, 1942, 10 Cir., 131 F.2d 198.

I find:

1) that the defendant had knowledge of his constitutional privilege against self-incrimination on every occasion on which he gave information or otherwise furnished evidence as to any transaction for which he might be prosecuted;

2) that the defendant never claimed his privilege against self-incrimination and never objected to testifying;

3) that the defendant was never compelled by any representative of the SEC or by any other person to testify or produce any evidence of a transaction for which he might be prosecuted;

4) that no representative of the SEC ever offered immunity to the defendant either expressly or impliedly.

Based upon the foregoing findings, the motion of the defendant Agostino DiRoma, Jr., to dismiss the indictment is denied.